# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2026-1147
Lower Tribunal Nos. 2025-CA-000467 and 2025-CA-000918

_____

EMMANUEL QUIAMBAO, SR. a/k/a JOSEPH EMMANUEL QUIAMBAO,

Petitioner,

v.

BERNADETTE QUIAMBAO a/k/a BERNADETTE GATDULA, EMMANUEL QUIAMBAO, JR.,
and HARMONY CLOSING CO., LLC,

Respondents.

_____

Petition for Writ of Prohibition to the Circuit Court for Osceola County.

July 31, 2026

WOZNIAK, J.

Petitioner Emmanuel Quiambao Sr. petitions this Court for a writ of prohibition preventing Judge Arendas "from exercising further jurisdiction" after she denied Petitioner's motion seeking her disqualification upon consideration of the truth of the matters asserted therein. Because the motion for disqualification was legally sufficient, we are compelled to grant the Petition.

Petitioner and Respondents consistently reference Judge Arendas as a "successor" judge; Respondents assert Judge Arendas, as a successor judge, properly

considered the truth of the facts asserted in the disqualification motion before denying same. While Judge Arendas is a successor judge in that she succeeds the originally assigned judge, she is not a successor judge as contemplated by Florida Rule of General Practice and Judicial Administration 2.330(i), which provides:

> **(i)** **Determination — Successive Motions**. If a judge has been previously disqualified **on motion** for alleged prejudice or partiality under subdivision (e), a successor judge cannot be disqualified based on a successive motion by the same party unless the successor judge rules that he or she is in fact not fair or impartial in the case. Such a successor judge may rule on the truth of the facts alleged in support of the motion.

(Emphasis added).

The predecessor judge, Judge Collins, recused herself sua sponte, without ruling on Petitioner's pending disqualification motion seeking her (Judge Collins's) disqualification. Hence, Judge Collins's departure from the case was not "on motion" as contemplated by the rule. *See Madura v. Turosienski*, 901 So. 2d 396, 398 (Fla. 2d DCA 2005) (establishing that rule on successive motions applies only to successor judges and not to successive motions to disqualify same judge or to motion to disqualify successor judge made after initial judge recused himself or herself). Because rule 2.330(i) does not apply here, it was error for Judge Arendas, relying on the provision of that rule that allows successor judges to rule on the truth of the facts asserted in the disqualification motion, to address and refute the

2

allegations made in Petitioner's disqualification motion before denying it. The facts alleged, taken as true as they must be, were legally sufficient and required that Judge Arendas grant the motion. *See* Fla. R. Gen. Prac. & Jud. Admin. 2.330(h) ("The judge against whom an initial motion to disqualify under subdivision (e) is directed may determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged.").

Petitioner also challenges Judge Arendas's entry of the written summary final judgment in favor of Respondent Harmony Closing Co., wherein Judge Arendas found that Petitioner lacked standing to challenge Harmony Closing Co.'s disbursement of funds to Respondent Emmanuel Quiambao, Jr. Petitioner argues that because Judge Arendas entered the written summary final judgment after he filed his disqualification motion, Judge Arendas was without authority to rule on the summary judgment motion. However, because the written summary final judgment merely reflects Judge Arendas's earlier oral ruling that Petitioner lacked standing, Judge Arendas was not precluded from reducing her oral ruling to a written final judgment. *See Godin v. Owens*, 275 So. 3d 700, 701 (Fla. 5th DCA 2019) ("The trial court . . . maintains the authority to perform the ministerial duty of preparing a written order to reflect oral pronouncements made before the motion to disqualify." (citations omitted)). Accordingly, to the extent that Petitioner challenges the

3

summary final judgment as an unauthorized act, Petitioner's argument is without merit.

We grant the Petition to the extent that it asserts Judge Arendas erred in denying Petitioner's motion for disqualification but otherwise deny the Petition. We withhold issuance of the writ directed at the disqualification motion, confident that Judge Arendas will grant the underlying motion for disqualification.

PETITION GRANTED in part; DENIED in part; WRIT WITHHELD.

SMITH, J., concurs.
PRATT, J., specially concurs, with opinion.

———————————————

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED

———————————————

PRATT, J., specially concurring.

I fully concur in the majority's opinion. I write separately for two reasons.

First, given the procedural history of this case, I think it's important for me to explain why the second trial court judge understandably misapprehended she was a successor judge to the first trial court judge under Florida Rule of General Practice and Judicial Administration 2.330. Relevant here, rule 2.330(h)-(i) states in full:

> **(h) Determination—Initial Motion.** The judge against whom an initial motion to disqualify under subdivision (e) is directed may determine only the legal sufficiency of the motion and shall not pass on

4

the truth of the facts alleged. If any motion is legally insufficient, an order denying the motion shall immediately be entered. No other reason for denial shall be stated, and an order of denial shall not take issue with the motion. If the motion is legally sufficient, the judge shall immediately enter an order granting disqualification and proceed no further in the action. Such an order does not constitute acknowledgement that the allegations are true.

**(i) Determination—Successive Motions.** If a judge has been previously disqualified on motion for alleged prejudice or partiality under subdivision (e), a successor judge cannot be disqualified based on a successive motion by the same party unless the successor judge rules that he or she is in fact not fair or impartial in the case. Such a successor judge may rule on the truth of the facts alleged in support of the motion.

Fla. R. Gen. Prac. & Jud. Admin. 2.330(h)-(i) (bold in original).

Shortly after Petitioner filed a motion to disqualify directed to the first trial court judge, the first trial court judge issued a recusal order. There was nothing wrong with the first trial court judge entering the recusal order without ruling on the pending motion to disqualify, as a trial court judge may recuse upon his or her own initiative where appropriate. *See* Fla. R. Gen. Prac. & Jud. Admin. 2.330(k). But the recusal order was just that—a recusal order, not an order granting a motion to disqualify.

After the case was transferred to the second trial court judge, litigation progressed, and one of the Respondents eventually filed a motion for summary judgment. The parties fully briefed the summary judgment motion, and the summary judgment motion was set for hearing. After the parties presented their arguments at

the summary judgment hearing, but prior to the end of the hearing, the second trial court judge orally granted the summary judgment motion.

It was only at this eleventh-hour juncture—after the summary judgment hearing had concluded but before the second trial court judge had entered a written order memorializing her oral ruling granting summary judgment—that Petitioner filed a motion to disqualify directed to the second trial court judge. The second trial court judge, in light of the prior filing of the motion to disqualify directed to the first trial court judge and the subsequent issuance of the first trial court judge's recusal order, understandably misapprehended that she was a successor judge within the meaning of rule 2.330. *See generally, e.g., J & J Indus., Inc. v. Carpet Showcase of Tampa Bay, Inc.*, 723 So. 2d 281, 283 (Fla. 2d DCA 1998) ("The freedom granted to trial judges to 'pass on the truth' of the allegations is confined by this subdivision to successor judges, and does not apply to mere successive motions as the unfortunately drafted title to the subdivision might suggest.").[1] Based on that misunderstanding, the second trial court judge—in actuality a non-successor judge under rule 2.330(h)—erroneously passed on the truth of the facts alleged as only a successor judge could do under rule 2.330(i) and denied the motion to disqualify. We are therefore constrained to grant the writ of prohibition sought by Petitioner,

---

[1] Petitioner's own motion to disqualify the second trial court judge certainly didn't help; it referred to her as a "successor judge" in the title of the motion and repeatedly throughout.

6

regardless of whether the motion to disqualify directed to the second trial court judge was legally sufficient, although we may withhold formal issuance of the writ assuming the second trial court judge will comply with our instructions and disqualify herself for a true successor judge to take her place. *See generally, e.g.*, *Bundy v. Rudd*, 366 So. 2d 440, 442 (Fla. 1978).

Second, setting aside the facts of this case, I think it's even more important for me to explain why the Legislature may wish to re-examine section 38.10, Florida Statutes—Florida's trial court disqualification statute—to consider amending it to close an apparent trial-court-disqualification-gamesmanship loophole in the statute. The apparent loophole is section 38.10's prohibition against initial trial court judges passing on the truth of the facts alleged in disqualification motions, which in turn has been interpreted by Florida courts to require initial trial court judges to grant disqualification motions that are legally sufficient even if the motions are only legally sufficient because they are premised on baseless or untrue factual allegations. To remedy this apparent loophole, the Legislature could, for example, amend section 38.10 to allow any trial court judge to pass on the truth of the facts alleged in a motion to disqualify and thereby do away with the distinction between initial motions/successive motions and initial trial court judges/successor trial court judges. Conceptually, this approach would discourage the filing of frivolous disqualification motions. It would be consistent with the "presumption disfavoring prejudice or bias

7

on the part of [a trial court] judge," *see Enter. Leasing Co. v. Jones*, 789 So. 2d 964, 968 (Fla. 2001)—each of whom is oath-bound to "well and faithfully perform" his or her duties, *see* art. II, § 5(b), Fla. Const., each of whom must ordinarily operate in the sunshine via public hearings and dockets (absent a legitimate reason for confidentiality), and each of whom is otherwise subject to varying forms of oversight, including election, *see* art. V, § 10, Fla. Const., discipline for judicial misconduct, *see* art. V, § 12, Fla. Const., and impeachment for misdemeanor in office, *see* art. III, § 17, Fla. Const. And it would provide all trial court judges—not just successor judges—with the same commonsensical tool to address frivolous disqualification motions: the ability to pass on the truth of the facts alleged and not be bound by facts a judge knows to be false when determining the legal sufficiency of a disqualification motion.

Before listing some questions the Legislature may wish to consider in determining whether to amend section 38.10, I provide some general, non-exhaustive background regarding Florida's legal framework for trial court disqualification. And not to bury the lede, but in my view, the pros of amending section 38.10 to close the trial-court-disqualification-loophole far outweigh the cons.

Chapter 38 contains Florida's disqualification statutes. *See generally* ch. 38, Fla. Stat. Section 38.10 is the trial court disqualification statute relevant to this case. Section 38.10 states in full:

**Disqualification of judge for prejudice; application; affidavits; etc.**—Whenever a party to any action or proceeding makes and files an affidavit stating fear that he or she will not receive a fair trial in the court where the suit is pending on account of the prejudice of the judge of that court against the applicant or in favor of the adverse party, the judge shall proceed no further, but another judge shall be designated in the manner prescribed by the laws of this state for the substitution of judges for the trial of causes in which the presiding judge is disqualified. Every such affidavit shall state the facts and the reasons for the belief that any such bias or prejudice exists and shall be accompanied by a certificate of counsel of record that such affidavit and application are made in good faith. However, when any party to any action has suggested the disqualification of a trial judge and an order has been made admitting the disqualification of such judge and another judge has been assigned and transferred to act in lieu of the judge so held to be disqualified, the judge so assigned and transferred is not disqualified on account of alleged prejudice against the party making the suggestion in the first instance, or in favor of the adverse party, unless such judge admits and holds that it is then a fact that he or she does not stand fair and impartial between the parties. If such judge holds, rules, and adjudges that he or she does stand fair and impartial as between the parties and their respective interests, he or she shall cause such ruling to be entered on the minutes of the court and shall proceed to preside as judge in the pending cause. The ruling of such judge may be assigned as error and may be reviewed as are other rulings of the trial court.

§ 38.10, Fla. Stat. (bold in original). Although section 38.10 does not expressly state that an initial trial court judge may only determine the legal sufficiency of a disqualification motion and may not pass on the truth of the allegations of a disqualification motion, the statute implies as much and has been interpreted so. *See* § 38.10, Fla. Stat. *See generally, e.g.*, *Brown v. St. George Island, Ltd.*, 561 So. 2d 253, 255 (Fla. 1990) ("When a party seeks to disqualify a judge under section 38.10, the judge cannot pass on the truth of the statements of fact set forth in the affidavit."

9

(citation omitted)); *State v. Rowe*, 118 So. 5, 8 (Fla. 1928) ("If the statements of fact contained in the affidavits required by the statute are legally sufficient to show that a judge is prejudiced against the affiant or in favor of an adverse party in a cause, the challenged judge should then state on the record his disqualification under the statute . . . , as under the statute the truth of allegations that are legally sufficient to show disqualifying prejudice of the judge against or in favor of any party to a cause cannot be determined by the challenged judge. If the allegations of fact are legally insufficient to show prejudice of the judge as contemplated by the statute, the judge should deny the application. The judge may determine the legal sufficiency of affidavits to state facts showing his disqualifying prejudice under the statute; but the judge cannot adjudicate the truth of such allegations." (citations omitted)); *Theo. Hirsch Co. v. McDonald Furniture Co.*, 114 So. 517, 520 (Fla. 1927) ("If the affidavit of the applicant states facts which clearly contain no reasonable basis for the asserted prejudice, or if the accompanying affidavits or certificate are not what the statute requires, may not the judge so determine? In other words, may not the

judge so far consider the application as to determine whether the affidavit is sufficient to invoke the operation of the statute?").[2,3]

[2] Federal trial courts are primarily governed by two disqualification statutes, including 28 U.S.C. § 144. *See generally* 28 U.S.C. § 144; 28 U.S.C. § 455. Federal courts have interpreted 28 U.S.C. § 144 to permit a federal trial court judge to determine the legal sufficiency of a disqualification motion but not to pass on the truth of the allegations of a disqualification motion. *See generally, e.g.*, *Berger v. United States*, 255 U.S. 22, 32 (1921) (noting the "distinction between determining the legal sufficiency of the affidavit [which the statute permits] and passing upon the truth of its statements [which the statute does not permit]"); *United States v. Brocato*, 4 F.4th 296, 301 (5th Cir. 2021) (acknowledging that under 28 U.S.C. § 144 a federal trial court judge "must [determine] the sufficiency of the affidavit, but may not pass on the truth of the affidavit's allegations" (citation omitted)). However, federal courts have determined that motions to disqualify can be legally insufficient for a number of reasons. *See generally, e.g.*, *Liteky v. United States*, 510 U.S. 540, 554-56 (1994) (referring to "the existence of a significant (and often determinative) 'extrajudicial source' factor" applicable to federal disqualification jurisprudence, discussing some of the "consequences" of that factor, and determining that the allegations for disqualification at issue were legally insufficient for various reasons); *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir. 2000) ("We have repeatedly stated that a party's displeasure with legal rulings does not form an adequate basis for recusal . . . ." (citations omitted)). *See generally Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004) ("Because the statute is heavily weighed in favor of recusal, its requirements are to be strictly construed to prevent abuse." (brackets omitted) (quoting *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993))).

Section 38.10 was initially modeled at least in part off of the predecessor statute to 28 U.S.C. § 144. *See Theo. Hirsch Co.*, 114 So. at 520 (noting that the two statutes were at that time "substantially the same"). The predecessor statute to 28 U.S.C. § 144 was first enacted in 1911 whereas section 38.10 was first enacted in 1919. *Compare Glasgow v. Moyer*, 225 U.S. 420, 425-26 (1912), *and* 28 U.S.C. § 144, *with* § 38.10, Fla. Stat. (see history line following statutory text). Although the texts of section 38.10 and 28 U.S.C. § 144 have since diverged somewhat, the core principles animated by the statutes remain similar. *Compare* 28 U.S.C. § 144, *with* § 38.10, Fla. Stat. Section 38.10 has not been substantively revised since 1983. *See* ch. 83-260, Laws of Fla. Although I have not done a comprehensive survey of all

fifty states, my preliminary research indicates that there are a variety of different approaches to trial court disqualification at the state level—some of which are consistent with the federal model and some of which are not. And some states' approaches, including those that preclude initial trial court judges from ruling on the truth of allegations contained in disqualification motions like Florida and others that even more permissively allow for peremptory strikes of initial trial court judges, seem particularly ripe for gamesmanship. *See generally, e.g.*, Gary Blankenship, *Panel Studies Rules Governing Judicial Recusal*, The Florida Bar (Jan. 15, 2010), https://www.floridabar.org/the-florida-bar-news/panel-studies-rules-governing-judicial-recusal/.

In any event, federalism permits national and state governments to adopt different trial court disqualification statutes, and for the reasons explained below, I believe the Legislature should consider amending section 38.10 to close an apparent trial-court-disqualification-gamesmanship loophole in Florida's trial court disqualification statute.

[3] Interestingly, section 38.10 used to present an additional hurdle to trial court disqualification that no longer exists in the current version of the statute. Section 38.10 originally required that the facts stated as a basis for making the affidavit be accompanied and supported in substance by the affidavits of at least two reputable citizens of the county not related to the defendant or counsel for the defendant. *See generally* ch. 7852, § 4, Laws of Fla. (1919). But nowadays, parties who file trial court disqualification motions need not include any affidavits aside from their own. *See generally* § 38.10, Fla. Stat. (2026). Another hurdle still exists in section 38.10 but is not rigorously applied. Section 38.10 has always presumed that an attorney—who is an officer of the court and governed by the Rules Regulating The Florida Bar—would separately verify via a certificate of counsel that a disqualification motion and accompanying affidavit were made in good faith. *Compare* ch. 7852, § 4, Laws of Fla. (1919), *with* § 38.10, Fla. Stat. (2026). But given the rise of self-represented litigants, courts have not enforced the attorney-verification requirement to pro se filings. *See Lages v. State*, 685 So. 2d 968, 969 (Fla. 2d DCA 1996); *cf. Caleffe v. Vitale*, 488 So. 2d 627, 628 (Fla. 4th DCA 1986). Aside from a 1983 statutory amendment which excised some language from the statute, section 38.10 has largely remained the same since it was first amended in 1923 over 100 years ago. *Compare* ch. 7852, § 4, Laws of Fla. (1919) (initial version of statute listed in history line following statutory text), *with* ch. 9276, § 1, Laws of Fla. (1923) (statute amended to add the successor judge and other related components to narrow the possibility of gamesmanship), *with* ch. 83-260, § 3, Laws of Fla. (statute amended

Separate and apart from any disqualification statutes, all Florida judges are governed by the baseline disqualification provisions of Florida's Code of Judicial Conduct. *See generally, e.g.*, Fla. Code Jud. Conduct, Canon 3E.(1) ("A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to [those] instances [enumerated herein] . . . ."). In my view, Florida's disqualification statutes, rules, canons, and jurisprudence are currently working well to promote confidence in Florida's judiciary and safeguard the integrity of Florida's judicial proceedings. The only limited issue that I am aware of regarding Florida's current disqualification framework is section 38.10's statutory prohibition against an initial trial court judge ruling on the truth of the facts alleged in a motion to disqualify.

Section 38.10 does not operate in a vacuum. Rule 2.330 procedurally governs the disqualification of trial court judges. Rule 2.330's current distinction between initial motions/successive motions and initial trial court judges/successor trial court judges exists to procedurally implement the substantive statutory right to disqualification—i.e., "one unfettered right" to obtain a trial court judge's disqualification—under section 38.10. *See* § 38.10, Fla. Stat. *See generally, e.g.,*

---

to remove the requirement of including affidavits of at least two reputable citizens, and to remove another requirement about when a party's affidavit must be filed), *with* ch. 95-147, § 212, Laws of Fla. (statute amended to include both male and female genders).

*Law Offs. of Herssein & Herssein, P.A. v. United Servs. Auto. Ass'n*, 271 So. 3d 889, 893 (Fla. 2018) ("A motion to disqualify is governed substantively by section 38.10, Florida Statutes . . . and procedurally by Florida Rule of [General Practice and] Judicial Administration 2.330." (citations omitted)); *Brown*, 561 So. 2d at 256 ("We believe that the legislature intended that a party should have only one unfettered right to obtain a judge's disqualification under section 38.10."); *In re Est. of Carlton*, 378 So. 2d 1212, 1216 (Fla. 1979) (explaining that section 38.10 "appl[ies] only to trial judges and not appellate judges").

Over the years, the Florida Supreme Court has offered several rationales for the trial court disqualification statute and/or rule. *See generally, e.g.*, *Fischer v. Knuck*, 497 So. 2d 240, 242 (Fla. 1986) ("The requirements set forth [in the trial court disqualification statute/rules] were established to ensure public confidence in the integrity of the judicial system as well as to prevent the disqualification process from being abused for the purposes of judge-shopping, delay, or some other reason not related to providing for the fairness and impartiality of the proceeding." (quoting *Livingston v. State*, 441 So. 2d 1083, 1086 (Fla. 1983))); *Bundy*, 366 So. 2d at 442 ("[The] disqualification rule, which limits the trial judge to a bare determination of legal sufficiency, was expressly designed to prevent . . . the creation of 'an intolerable adversary atmosphere' between the trial judge and the litigant." (quoting *Dep't of Rev. v. Golder*, 322 So. 2d 1, 7 (Fla. 1975))).

However, the Florida Supreme Court has acknowledged that the current legal framework for trial court disqualification comes at a cost. Namely, because the trial court disqualification statute and/or rule prohibit initial trial court judges from passing on the truth of the facts alleged in a disqualification motion, initial trial court judges must sometimes grant disqualification motions as legally sufficient even if the motions are premised on baseless or untrue factual allegations. *See generally, e.g.*, *Davis v. State*, 347 So. 3d 315, 324-25 (Fla. 2022) ("[O]ur rule for motions for disqualification is prophylactic: some motions will inevitably be granted where a judge is not in fact biased—and thus the feared harm would not have been realized. . . . A motion for disqualification may list any number of baseless or untrue allegations and nonetheless be legally sufficient. In that case, . . . a judge must grant the legally sufficient motion . . . ." (citation omitted)).

Unfortunately, this negative tradeoff is not theoretical; it actually occurs. Indeed, a number of initial trial court judges have made the reversible error of ruling on the truth of the facts underlying a disqualification motion and denying the motion, apparently because the motions were premised on baseless or untrue factual allegations. *See generally, e.g.*, *Blalock v. State*, 297 So. 3d 688, 690 (Fla. 1st DCA 2020) (disqualification required where an initial trial court judge denied a motion to disqualify after finding that the allegations in the motion were "patently false"); *Frost v. Ward*, 622 So. 2d 597, 598 (Fla. 4th DCA 1993) (disqualification required

15

where an initial trial court judge denied a motion to disqualify after finding that the allegations in the motion were "factually incorrect"); *Stewart v. Douglas*, 597 So. 2d 381, 381-82 (Fla. 1st DCA 1992) (disqualification required where an initial trial court judge denied a motion to disqualify after finding that the allegations in the motion were "untrue"); *Hill v. Feder*, 564 So. 2d 609, 609 (Fla. 3d DCA 1990) (disqualification required where an initial trial court judge denied a motion to disqualify after finding that the allegations in the motion were "in fact, totally false"). This is unsurprising, as the unscrupulous are known to seek to abuse the trial court disqualification statute. *See generally, e.g.*, *Nassetta v. Kaplan*, 557 So. 2d 919, 921 (Fla. 4th DCA 1990) ("[M]otions to disqualify trial judges are becoming more prevalent . . . . We increasingly encounter situations where the motive behind a motion to disqualify is obviously to gain a continuance or to get rid of a judge who evidences doubt or displeasure as to the efficacy of the movant's cause of action by oral comment or by entering adverse judicial rulings.").

Florida courts have acknowledged that motions to disqualify can be legally insufficient for a number of reasons. *See generally, e.g.*, *Hilton v. State*, 326 So. 3d 640, 653 (Fla. 2021) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994))); *Hilton*, 326 So. 3d at 653 (acknowledging that "judicial bias

16

claims based on adverse rulings are legally insufficient to warrant disqualification" (citing *Schwab v. State*, 814 So. 2d 402, 414 (Fla. 2002))); *Braddy v. State*, 111 So. 3d 810, 834 (Fla. 2012) (acknowledging that "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune" from motions to disqualify (quoting *Liteky*, 510 U.S. at 556)). These practical safeguards are consistent with the longstanding notion under Florida's decisional authorities interpreting section 38.10 as reflected in rule 2.330 that a motion to disqualify must "set forth . . . specific and material facts upon which the judge's impartiality might *reasonably* be questioned." Fla. R. Gen. Prac. & Jud. Admin. 2.330(e) (emphasis added). *See generally, e.g.*, *Law Offs. of Herssein & Herssein*, 271 So. 3d at 893-94 ("A motion to disqualify is governed substantively by section 38.10, Florida Statutes . . . and procedurally by Florida Rule of [General Practice and] Judicial Administration 2.330. . . . A mere subjective fear of bias or prejudice will not be legally sufficient; rather, the fear must be objectively reasonable." (citations, brackets, and internal quotation marks omitted)). Unfortunately though, such safeguards do not prevent the filing of potentially legally sufficient disqualification motions premised upon "baseless or untrue allegations," *see Davis*, 347 So. 3d at 325, or the resulting burdens imposed on Florida's trial courts, which must in the middle of a case substitute a disqualified initial trial court judge for a successor trial court judge who is then required to get

17

up to speed from the ground up on a case that the initial trial court judge may have already expended substantial judicial labor upon.[4]

One might respond that section 38.10 is fine as is because disqualification motions premised on baseless or untrue allegations can lead to bar referrals and even criminal sanctions for perjury. *See generally, e.g.*, *Brinson v. State*, 789 So. 2d 1125, 1127 n.1 (Fla. 2d DCA 2001); *Layne v. Grossman*, 430 So. 2d 525, 526 (Fla. 3d DCA 1983). But these back-end remedial actions do not necessarily discourage the occurrence of a front-end problem. And they may not be necessary or appropriate, for example, in circumstances where litigants or attorneys objectively file disqualification motions in good faith based on their misinterpretations of an initial trial court's actions or inactions or their misapprehensions of the existence of the factual allegations contained in their motions.[5]

---

[4] More broadly speaking, the filing of frivolous, legally insufficient disqualification motions imposes significant burdens on the administration of justice that transcends all levels of Florida's judiciary—not just Florida's trial courts. Those litigants who file frivolous, legally insufficient disqualification motions at the trial court level—which unnecessarily waste the time and attention of an initial or successor trial court judge—are precisely the type of litigants most inclined to frivolously seek review in Florida's appellate courts of an initial or successor trial court judge's appropriate denial of a frivolous, legally insufficient disqualification motion.

[5] To reiterate, I am not writing about this particular case in this section of my opinion. But lest the unscrupulous in other cases read this opinion and consider employing the trial-court-disqualification-gamesmanship loophole discussed herein—a word of caution. These back-end consequences are real and significant. Perjury is no joke; it's a criminal offense. *See generally* § 837.02, Fla. Stat. And no

18

Trial court judges, each of whom have taken an oath to uphold the constitution and laws of our state and nation, and each of whom are subject to varying forms of oversight, are on the one hand presumed to be fair and impartial. But it is curious that that presumption is jettisoned whenever a litigant or attorney makes a legally sufficient factual allegation of bias or prejudice against an initial trial court judge— even if the judge knows the allegation to be false. It seems to me that such a framework is ripe for potential abuse, and that even the possibility of trial-court-disqualification-gamesmanship may potentially undermine the public's confidence in the integrity of judicial proceedings, insofar as initial trial court judges may need to disqualify themselves based on legally sufficient but baseless or untrue factual allegations under Florida's current trial court disqualification framework.

Excising from section 38.10 the prohibition against initial trial court judges passing on the truth of the facts alleged in disqualification motions would not hamper further judicial review of the denial of disqualification motions. To the contrary, Florida's decisional authorities have established a well-worn jurisprudential path for appellate courts to address whether successor trial court judges have abused their

---

client's case is worth an attorney losing his or her good reputation and facing bar discipline. *See generally* Fla. Code Jud. Conduct, Canon 3D.(2) ("A judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action."); R. Regulating Fla. Bar 3-7.18 (rule governing the disposition of inquiries or complaints referred to the Bar by members of the judiciary).

discretion in denying disqualification motions. *See generally, e.g.*, *Kokal v. State*, 901 So. 2d 766, 774 (Fla. 2005) (holding that the "more stringent standard . . . of review" when evaluating an order denying a "successive disqualification motion" is "whether the record clearly refutes the successor judge's decision to deny the motion" (quoting *Pinfield v. State*, 710 So. 2d 201, 202 (Fla. 5th DCA 1998))); *Pinfield*, 710 So. 2d at 202 ("A successor judge is entitled by rule to pass on the truth of the facts alleged in support of a motion to disqualify. On review of the successor judge's denial of a motion to disqualify, the test is not whether said judge explicitly ruled that he is in fact not fair and impartial but whether the record clearly refutes the successor judge's decision to deny the motion." (citation omitted)); *Ardis v. Ardis*, 130 So. 3d 791, 795-96 (Fla. 1st DCA 2014) ("The denial of a motion to disqualify a successor judge is reviewed for abuse of discretion . . . ." (citing *King v. State*, 840 So. 2d 1047, 1049 (Fla. 2003))); *Carnevale v. Shir*, 359 So. 3d 1257, 1258 (Fla. 3d DCA 2023) ("After a thorough examination of the record, a reasonable jurist could conclude that the allegations fail to rise to a level justifying [disqualification]. Accordingly, the petition for prohibition [seeking to reverse the denial of petitioners' motions to disqualify the successor trial court judge] must fail."). Amending section 38.10 to allow all trial court judges to pass on the truth of the facts alleged in disqualification motions would simply require application of the settled

20

jurisprudence already applicable to successor trial court judges to all trial court judges.

For what it's worth, the only judges in Florida that cannot pass on the truth of the facts alleged in a motion to disqualify are initial trial court judges. Successor trial court judges can. *See generally, e.g.*, *J & J Indus., Inc.*, 723 So. 2d at 283. District court of appeal judges can. *See generally, e.g.*, *Clarendon Nat. Ins. Co. v. Shogreen*, 990 So. 2d 1231, 1233 (Fla. 3d DCA 2008). Florida Supreme Court justices can. *See generally, e.g.*, *In re Est. of Carlton*, 378 So. 2d at 1216. In my view, the longstanding ability of the vast majority of Florida's jurists to pass on the truth of facts alleged in disqualification motions—including successor trial court judges, district court of appeal judges, and Florida Supreme Court justices—presents no problems or concerns. And to my knowledge, Florida's disqualification framework is working well—at least when it comes to successor trial court judges, district court of appeal judges, and Florida Supreme Court justices.

As a single district court judge on an intermediate appellate court, I must faithfully apply all applicable statutes, rules, canons, and decisional authorities to the cases that come before me pertaining to trial court disqualification, and I will of course continue to do so. *See generally Michaud-Berger v. Hurley*, 607 So. 2d 441, 447 (Fla. 4th DCA 1992) (Letts, J., specially concurring) (expressing one district court judge's concerns about "the current state of the law on [trial court

21

disqualification]," acknowledging that "a three-judge panel at an intermediate level cannot change a rule of civil procedure, a statute and existing case law," and lamenting that "[i]t is all too easy to get rid of a judge nowadays"). Nevertheless, in my limited role as a district court judge, I am free to express my concern to the Legislature that section 38.10 as written may create more problems than it solves by on the one hand tying an initial trial court judge's hands from ruling on the truth of the facts alleged in a disqualification motion and on the other hand allowing for potential trial-court-disqualification gamesmanship. *See generally, e.g.*, *Kirk v. State*, 303 So. 3d 604, 606 (Fla. 5th DCA 2020) (district court "commend[ing] [an] issue to the State Legislature with the suggestion that it consider amending [a] statute"); *Knipp v. State*, 67 So. 3d 376, 380 n.3 (Fla. 4th DCA 2011) (district court explaining that "[t]he Legislature may well want to consider amending [a statute or statutes] to address [an] issue"); *Fla. Dep't of Agric. & Consumer Servs. v. Dolliver*, 283 So. 3d 953, 964 (Fla. 2d DCA 2019) (Badalamenti, J., concurring specially) ("I fully concur in the opinion of the court. I write separately to suggest that the legislature consider certain amendments to [a statute]."). I am also free to reiterate my belief that the pros of amending section 38.10 to close the trial-court-disqualification-loophole far outweigh the cons.

In any event, I believe that the Legislature—Florida's chief policy-making body—is well-positioned to weigh the pros and cons of section 38.10 and to

legislatively determine whether section 38.10's prohibition against initial trial court judges passing on the truth of the facts alleged in a disqualification motion should be maintained, excised, or amended in some other form or fashion. I offer the following non-exhaustive list of questions for the Legislature's potential consideration in determining whether section 38.10 aligns with the Legislature's intent:

- Does section 38.10 as written adequately "prevent the disqualification process from being abused for the purposes of judge-shopping, delay, or some other reason not related to providing for the fairness and impartiality of the proceeding?" *See Fischer*, 497 So. 2d at 242.
- Does section 38.10 as written enhance or diminish "public confidence in the integrity of the judicial system?" *See id.*
- Is the potential risk of an "intolerable adversary atmosphere," *see Bundy*, 366 So. 2d at 442, between an initial trial court judge and a litigant arising from an initial trial court judge ruling on the truth of a motion to disqualify outweighed by the potential benefit of an amended section 38.10 addressing any actual or perceived misuse of the trial court disqualification statute?
- Is the potential risk of "bias and prejudice," *Tableau Fine Art Group, Inc. v. Jacoboni*, 853 So. 2d 299, 301 (Fla. 2003), arising from an initial trial court judge ruling on the truth of a motion to disqualify outweighed by the potential benefit of an amended section 38.10 addressing any actual or perceived misuse of the trial court disqualification statute?
- Do the same potential risks exist when a successor trial court judge rules on the truth of a motion to disqualify, and if so, does this weigh against precluding an initial trial court judge from ruling on the truth of a motion to disqualify?
- Since section 38.10 already entrusts successor trial court judges to rule on the truth of a motion to disqualify, is there a good policy reason not to entrust initial trial court judges—who are subject to the same presumption of being fair and impartial, who take the same

23

oath of office, and who are subject to the same forms of oversight—to do the same?

- Are the potential back-end remedial sanctions of bar referrals and criminal sanctions for perjury sufficient to discourage on the front-end the filing of disqualification motions premised on baseless or untrue allegations?

- If an initial trial court judge is required to grant a disqualification motion as legally sufficient solely because the initial trial court judge could not rule on the truth of the baseless, untrue allegations contained therein, does requiring a successor trial court judge to get up to speed on a new case create inefficiencies in that case?

- Collectively and in the aggregate, does requiring initial trial court judges to grant disqualification motions as legally sufficient solely because initial trial court judges cannot rule on the truth of baseless, untrue allegations contained therein create inefficiencies in the administration of justice in Florida?

- Is there any reliable data available to show how much of a problem trial-court-disqualification gamesmanship actually is or isn't? Is data even necessary to make any amendment to section 38.10, given the apparent existence of a trial-court-disqualification-gamesmanship loophole in section 38.10?

- Are there any other considerations the Legislature should take into account when determining whether to amend section 38.10 to close the trial-court-disqualification-gamesmanship loophole?

Accordingly, I respectfully recommend that the Legislature consider studying the potential pros and cons of amending section 38.10 to close the trial-court-disqualification-gamesmanship loophole and, if it so chooses, amending section 38.10 to, for example, allow any trial court judge to pass on the truth of the facts alleged in a motion to disqualify and thereby do away with the distinction between initial motions/successive motions and initial trial court judges/successor trial court judges. In doing so, I reiterate my belief that aside from this limited issue, Florida's

disqualification statutes, rules, canons, and jurisprudence are currently working well to promote confidence in Florida's judiciary and safeguard the integrity of Florida's judicial proceedings and need not otherwise be changed.[6]

With these observations, I concur.

_____

Emmanuel Quiambao, Sr., Kissimmee, pro se.

Bernadette Quiambao, Saint Cloud, pro se.

Emmanuel Quiambao, Jr., Saint Cloud, pro se.

Kimberly Kanoff Berman, of Marshall Dennehey, P.C, Fort Lauderdale, and Dante C. Rohr, of Marshall Dennehey, P.C., Orlando, for Respondent, Harmony Closing Co., LLC.

---

[6] A hypothetical disqualification statute could perhaps theoretically raise concerns of a potential encroachment upon the separation of powers on some set of facts. *See generally, e.g.*, 46 Am. Jur. 2d Judges § 82 (2026) (discussing the validity of statutes governing disqualification of judges); 91 A.L.R.5th 437 (2001) (collecting cases). However, I am aware of no such argument having ever been made regarding Florida's disqualification statutes, Florida's current disqualification statutes appear to comfortably rest within the mainstream of the varying states' approaches to judicial disqualification, and amending section 38.10 to grant more rather than less discretion to trial court judges to evaluate the truth of factual allegations when deciding disqualification motions seems a far cry from any such theoretical concerns.